UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NOOR ALJARAH,

                                    Plaintiff,

                                                        **Hon. Hugh B. Scott**

                                                        16CV812G

                    v.                                  **Order**

CITIGROUP GLOBAL MARKET INC.,
CITIGROUP TECHNOLOGY, INC.,
CITICORP NORTH AMERICA, INC., and
CITIGROUP INC. ("CITI"),

                                    Defendants.

        Before the Court are plaintiff's motions to compel (Docket Nos. 54, 66).  The second

motion was filed after the parties met and conferred over the issues arising from the first motion,

with the second motion being presented as a refinement of the issues raised in the first.  This

Court thus will address both motions together as if they were a single motion.[1]

        In both motions, plaintiff sought extension of her deadline to identify her expert (Docket

Nos. 54, 66).  In scheduling the first motion, this Court in effect granted this extension by

holding the expert identification deadline in abeyance (Docket No. 55, Order of June 15, 2018).

This Court intended to address the subsequent deadlines in the Scheduling Order (Docket

No. 35) upon resolution of plaintiff's initial motion to compel.  After a status conference and

---

[1]Also pending is plaintiff's motion for leave to amend the Amended Complaint, Docket No. 68, which is plaintiff's third motion (see Docket Nos. 11 (stipulation), 14, 43) seeking such leave.  Responses to the latest motion is due by November 6, 2018, and any reply by November 13, 2018, Docket No. 69.

initial argument on August 7, 2018, this Court held in abeyance the remaining Scheduling Order deadlines upon resolution of either the underlying discovery dispute or the motion (Docket No. 62).

There appears to be some confusion with this; defendants assumed only the plaintiff expert disclosure deadline was held in abeyance and concluded that plaintiff's subsequent discovery demands were untimely under the Scheduling Order (see Docket No. 66, Pl. 2d Motion, Ex. A, letter of defense counsel to plaintiff, Sept. 6, 2018). To be clear, deadlines of the Scheduling Order (Docket No. 35), were held in abeyance, meaning that parties could continue to conduct discovery or other pretrial proceedings but the deadlines would be reset upon resolution of plaintiff's discovery dispute, as will be done in this Order. This Order will (a) resolve plaintiff's motions and the discovery dispute and (b) set a provisional Amended Schedule.

Responses to the initial motion to compel were due by June 28, 2018 (Docket No. 55), which defendants filed and served (Docket Nos. 56, 57). Replies were due by July 6, 2018 (Docket No. 55; see Docket No. 61, Pl. Reply, dated Aug. 2, 2018). A status conference then was scheduled and eventually held on August 7, 2018 (Docket Nos. 58, 62; see Docket Nos. 59, 60). There, the parties were directed to meet and confer to attempt resolution of the discovery issues (Docket No. 62).

Following exchanging correspondence, plaintiff served her second motion to compel (Docket No. 66) essentially renewing her earlier demands (id.). Another status conference was held on September 12, 2018, and this Court reserved decision on the motions (Docket No. 67).

Plaintiff has proceeded <u>pro se</u> through much of this case, including these motions to compel.

BACKGROUND

*Initial Complaint*

Plaintiff initially sued defendant Citigroup Global Market Inc. (Docket No. 1) alleging violation of Title VII, 42 U.S.C. §§ 2000e to 2000e-17. Plaintiff alleged that defendant failed to hire her due to religion (Muslim) and national origin (Iraqi) (<u>id.</u>).

*Defense Motion to Dismiss (Docket No. 6) and FBI Background Check*

Citigroup Global Market then moved to dismiss in part arguing that it was not a proper party (Docket No. 5; <u>see generally</u> Docket No. 6, Def. Memo. at 4-5; Docket No. 8, Decl. of Louis Santangelo, director and associate general counsel of Citigroup, Inc.). In support of this motion, defense counsel included the redacted version of plaintiff's background check conducted by the Federal Bureau of Investigation ("FBI") (Docket No. 7, Def. Citigroup Global Market Atty. Decl. ¶ 3, Ex. 1). The deletions, apparently by the FBI (but not clearly stating who made the redactions), were either to preserve law enforcement privilege, with the United States Department of Justice and the FBI claiming that disclosure of such information would impede or impair the effectiveness of investigation techniques, methods, or procedures of the agency; or to prevent the unwarranted invasion of personal privacy (<u>id.</u>, Ex. 1, at 2), such as disclosure of plaintiff's Social Security number, <u>see also</u> Fed. R. Civ. P. 5.2(a)(1). The law enforcement redactions appear to eliminate the names of sources that identified plaintiff as a "person of interest" for the fingerprints the agency received on November 22, 2013, and May 31, 2015 (<u>id.</u>,

3

Ex. 1).  Also redacted was the second charge against the person fingerprinted (id.)[2].  The FBI

report concludes that "all arrest entries contained in this FBI record are based on fingerprint

comparisons and pertain to the same individual," with the disclaimer that "the use of this record

is regulated by law.  It is provided for official use only and may be used only for the purpose

requested" (id., Ex. 1 at 10).  This redacted report is at issue in plaintiff's present motions to

compel.

*Subsequent Proceedings*

The parties stipulated to amend the Complaint to name the correct defendants (Docket

No. 11) and plaintiff formally moved to amend the Complaint (Docket No. 14).  The pending

motions to dismiss and for leave to amend were argued on July 20, 2017, before Chief Judge

Frank Geraci and, based upon the stipulation, defendant's motion to dismiss was denied and

plaintiff's motion for leave to amend deemed moot (Docket No. 21).  On July 24, 2017, this case

was referred to the undersigned (Docket No. 22) and pro bono counsel was assigned to plaintiff

(Docket No. 23).  Defendants Citigroup Global Market, Citicorp North America, Inc., and

Citigroup Technology, Inc., answered (Docket No. 28).

This Court then held a scheduling conference, on November 8, 2017 (Docket No. 34),

setting the present Scheduling Order (Docket No. 35).  Under this Schedule, plaintiff's expert

disclosure would be due by June 4, 2018, and all discovery was to be finished by July 18, 2018

(Docket No. 35).

---

[2]For example, one entry (similar to the others) in the FBI background check read "Charge 1—this subject
has been identified by [redaction] as a person of interest, for additional information contact [redaction] at com
[redaction] or [redaction]

"Charge 2—[redaction]." Docket No. 7, Def. Atty. Decl. Ex. 1, at 4.

The parties later conducted mediation (see Docket No. 38). On February 6, 2018, plaintiff's pro bono counsel moved to withdraw (Docket No. 39) which was granted (Docket No. 40, Order of Feb. 8, 2018) and plaintiff resumed proceeding pro se. Plaintiff later argues that her appointed counsel met and conferred with defense counsel but obtained "absolutely nothing" from defendants and, due to conflicting views of counsel and client, led to the withdrawal of pro bono counsel (Docket No. 61, Pl. Reply at 4).

On February 26, 2018, plaintiff again moved to amend the Complaint to add Citigroup Inc. as a defendant (Docket No. 43). That motion was granted (Docket No. 46). Plaintiff served and filed the Amended Complaint (Docket No. 49, filed Mar. 28, 2018) and defendants (hereinafter to identify all four Citigroup defendants named) answered (Docket No. 50).

*Plaintiff's Claims*

In her Amended Complaint (Docket No. 49), plaintiff alleges intentional discrimination in hiring that defendants refused to hire her because of her religion (Muslim) and national origin (Iraqi) (id. at 1). She further alleges that defendants discriminated against plaintiff based on her nationality and religion inferred by defendants' security personnel from her presence, photographs, and identification which all showed her wearing traditional Muslim headscarf or hijab (id. at 2). In October 2015, plaintiff applied for and was interviewed for the position of data entry clerk with defendants through Randstad Staffing Agency ("Randstad") (id.). Part of the application process, plaintiff submitted to a background check and, despite coming back clear, security personnel insisted plaintiff undergo a second international background check (id. at 3, Ex. B (credit check)). While waiting for this application to be considered, plaintiff applied for permanent positions with defendants and was offered a temporary position with them but

needed to wait for defendants' security office to clear her to start (id. at 3). After interviews and one email notifying her of interest in the Citigroup Lockbox Management group, on December 16, 2015, plaintiff received a second email from Randstad stating that it received word from defendants that plaintiff had not passed a background check and therefore could not be hired (id. at 4). On December 21, 2015, plaintiff wrote to defendants requesting an official reason for denying her employment but defendants never responded (id.). In January 2016, plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") (id. at 2, Ex. A).

According to defendants (in response to the motions to compel), plaintiff applied for employment as a data entry clerk at Citi's Public Sector Lockbox in Getzville, New York (Docket No. 56, Defs. Memo. at 4). The Public Sector Lockbox "provides government services to public entities, including under confidential contracts with the United States government" (id. at 2; see also Docket No. 6, Def. Memo. Motion to Dismiss at 2; Docket No. 8, Santangelo Decl. ¶¶ 6, 7, 11). Defendants contend that "applicants for positions with the Public Sector Lockbox unit are required to submit their fingerprints and other pertinent information for a background check conducted under the auspices of the Federal Bureau of Investigation . . . as a condition of employment" (Docket No. 56, Defs. Memo. at 2). "Because Plaintiff's FBI Background Check revealed that she had been labeled a 'person of interest' by government authorities, Citi notified Plaintiff (through Randstad Staffing Agency . . . .) that she could not be hired to work in its Public Sector Lockbox unit" (id.).

*Plaintiff's Motions to Compel (Docket Nos. 54, 66)*

A status conference was held on May 9, 2018 (Docket No. 53) and plaintiff said she needed additional time to identify her expert because she still needed to receive discovery; this Court agreed and said it would amend the Scheduling Order deadlines accordingly (id.). On June 14, 2018, plaintiff filed the first motion to compel (Docket No. 54). There, she contends that, on March 28, 2018, she served her First Set of Interrogatories and Document Requests upon defendants (Docket No. 54, Pl. Aff. ¶ 5, Ex. A) and amended requests on April 23, 2018 (id. ¶ 6, Ex. B).

Defendants respond that plaintiff failed to meet and confer and alternatively that they produced in their initial and supplemental responses to discovery documents responsive and relevant to this case and raised objections to plaintiff's demands (Docket No. 56, Defs. Memo. at 1). Defendants produced 100 pages of documents to plaintiff that they deemed responsive to plaintiff's demands and, notwithstanding objections, relevant to this case (id. at 4-5). In addition to raising objections on such grounds as proportionality and overbreadth (see generally Docket No. 57, Ex. 3, Defs. Supp'al Objections & Responses to Pl.'s Am. First Set of Interrog. and Requests), defendants responded to plaintiff's requests.

Following the August 7, 2018, status conference (Docket No. 62), the parties had the opportunity to meet and confer to resolve the discovery dispute. Following that meeting (an exchange of correspondence really, Docket No. 66, Pl. 2d Motion Aff. ¶¶ 5, 7), plaintiff served her second set of requests and responses to defense discovery (id. ¶¶ 6, 8), which defendants refused to answer on timeliness grounds (id. ¶ 9), and plaintiff then filed her second motion to

compel (Docket No. 66) which presumably refines the discovery issues for judicial resolution. As thus refined, plaintiff seeks production of the following items from defendants:

A.  Defendants' hiring agreement with Randstad;

B.  Defendants' communications (presumably electronic) with Randstad related to plaintiff before her orientation for the part-time position, on October 13-16, 2015, in its native format with metadata;

C.  Defendants' (again presumably electronic) communications with Randstad responsive to plaintiff's Document Request No. 7 regarding plaintiff's interview for the cash and trade processing representative on weekend shift position;

D.  The FBI's confidentiality direction to defendants which led defendants to redact the entire background check report to the EEOC on law enforcement privilege grounds;

E.  Defendants' emails contained in "Exhibit C," again in their native format with all metadata and produce copy of the bank's background check policy referred to in that email;

F.  Defendants' emails contained in "Exhibit D," again in their native format with all metadata and produce copy of the bank's background check policy referred to in that email; and

G.  Defendants' production of documents responsive to plaintiff's Requests for Documents (presumably both the first and second requests) within fifteen days of entry of this Order.

She argues that defendants steadfastly and improperly refused to produce these items (id. at 1).

Plaintiff also seeks extension of time (45 days) to provide expert identification (Docket No. 66). Under the current Scheduling Order (Docket No. 35), plaintiff's expert identification was due by June 4, 2018, with discovery to be completed by July 18, 2018.

## DISCUSSION

I.    Applicable Standards

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention. See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2007).

Federal Rule 26(b)(2)(C)(i) allows this Court to limit the scope and means for discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Under Rule 26(c), this Court may issue a protective order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense" by not having a proposed disclosure or discovery device or conditioning the time and manner of that discovery. Fed. R. Civ. P. 26(c)(1), (1)(B)-(C); see id. R. 26(c)(1)(D) (limit the scope or the matters inquired into).

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an Order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A). Similarly, under Rule 26(c), prior to obtaining a protective order the movants must certify that they have in good faith conferred or attempted to confer with the other affected parties to resolve the dispute without court intervention, Fed. R. Civ. P. 26(c). Under Rule 26(c), the Court has power to protect against abuses in discovery. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). The appropriateness of a protective Order is a balance of the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought. Mitchell v. Fishbein, 227 F.R.D. 239, 245 (S.D.N.Y. 2005). This Court has broad discretion in issuing such a protective order. Seattle Times, supra, 467 U.S. at 36.

This Court also notes that plaintiff is proceeding pro se. As with a pro se litigant's pleadings, the filings of a pro se plaintiff here are to be liberally construed, see Haines v. Kerner, 404 U.S. 519 (1972) (per curiam).

II.     Duty to Meet and Confer

Ordinarily, defendants would be correct, plaintiff's first motion should be denied because of her failure to sufficiently state her attempts to meet and confer with them to resolve the underlying discovery issues prior to filing her first motion. This Court, however, afforded the parties at least one status conference and direction after that conference for the parties to meet and confer to resolve the discovery dispute before judicial intervention (Docket No. 62). The parties then reported that the issues were narrowed from that meeting. Given plaintiff's pro se

10

status, cf. Haines, supra, 404 U.S. 519, and the meeting of the parties prior to the filing of the

second motion to compel in effect constituting meeting and conferring on the discovery issues,

this Court will consider the merits of plaintiff's two motions.

III.    Motions to Compel

This Court next addresses each of plaintiff's outstanding issues set forth in the second

motion.

A.      Defense-Randstad Communications; Emails and Their Metadata [Items A, B, C,
        E, and F]

From the moving papers, it is not clear which emails plaintiff is referring for which she

seeks their underlying metadata and original documents to identify missing information

contained in the version she was served with.  The second motion (Docket No. 66) did not attach

Exhibits C or D.  This appears to address plaintiff's Request No. 6 (see Docket No. 54, Ex. B, at

4; Docket No. 57, Ex. 3, Defs.' Supp'al Objections & Responses to Pl.'s Am. First Set of

Interrog. and Requests, at 8-9)[3].  Plaintiff also seeks defense emails contained in "Exhibit C" or

"Exhibit D" (Docket No. 66, Pl. 2d Motion at 4, 5) without clearly identifying where these

exhibits came from or the date, sender, or recipient of the emails in question.

As described below, there were multiple background checks conducted on plaintiff.

According to defendants' discovery response, Randstad contracted with Business Information

Group (or "BIG") to conduct the first background check in October 2015; deficiencies were

found in the international criminal background of that inquiry requiring a second check by BIG

(Docket No. 57, Ex. 3, at 6-7) which was provided in November 2015 (id. at 8-9).  A third

_____

[3]For convenience, this Court will cite to defendants' response to this discovery demand, Docket No. 57,
Ex. 3.

background check through the FBI was required for employment in the Public Sector lockbox unit (id. at 7, 9).  Defendants based their hiring decision on the failure of the FBI check (id. at 7) and not on the Randstad/BIG checks.  Therefore, inquiries into what defendants told Randstad were not relevant, save Randstad was plaintiff's contact regarding her application(s) to defendants (see Docket No. 1, Compl., Ex. 5, email Kiera Medved, Randstad, to plaintiff, Dec. 16, 2015).  In that December 16, 2015, email from Randstad, plaintiff was told that "Citigroup informed me that unfortunately you did not pass their background requirements.  I am not privy to any further information other than that, so I am not able to provide more details" (id.).  From this, further inquiry as to what defendants told Randstad **would not lead to relevant evidence**; plaintiff's motion to compel this [Items B, C, E and F] is **denied**.  It remains unclear whether the metadata for these emails will reveal relevant evidence.  Plaintiff does not allege that these emails were edited (in fact, she fails to produce or identify them for Court inspection) to require inquiry into its origin or authenticity.

Defendants' contract with Randstad [Item A], however, may reveal the employment process, what background checks were required, and where ultimate hiring authority rests. Review of the production within the moving papers does not show defendants responded to this request or produced their contract with Randstad.  That contract **leads to relevant evidence** and, absent arguments of overbreadth or being out of proportion to the claims and defenses in this case, that contract **ought to be produced**.  Plaintiff's motion to compel this item [Item A] is **granted**.

B.      FBI Confidentiality [Item D]

Plaintiff's next request goes to the source for the decision to redact the background check report provided to the EEOC.  Presumably, these are the same redactions in the background check filed with defendant Citigroup Global Market's initial motion to dismiss (Docket No. 6). This request arises from plaintiff's Request Number 5 regarding the methods used by defendants to obtain her fingerprints for the FBI report (see Docket No. 57, Defs. Atty. Decl., Ex. 3, at 7). In her reply, plaintiff argues that the FBI report "is nothing but Plaintiff's fingerprints transaction sheets that show Plaintiff's fingerprints transactions whenever she travels overseas for family visit to Iraq" (Docket No. 61, Pl. Reply at 8) with page 9 of the report showing the last transaction on October 23, 2015 (Docket No. 61, Pl. Reply at 8; see also Docket No. 7, Def. Atty. Decl., Ex. 1, at 9).  In her second motion, plaintiff produced a letter from the FBI's Criminal Justice Information Services Division, which stated that background checks are provided "without comment or interpretation" and that each inquirer submitting fingerprints for employment or licensing purposes "will approve or deny their applicants based on criteria which are specific to that agency or established by law; the FBI does not make this decision" (Docket No. 66, Pl. 2d Motion, Pl. Aff. Ex. B).  In her proposed Second Amended Complaint, however, plaintiff plans to allege that defendants "unlawfully and intentionally concealed documents and falsely redacted Plaintiff's FBI report upon Law Enforcement Privilege to deprive Plaintiff of her rights under Title VII" (Docket No. 68, Pl. Motion for Leave to Amend, Ex., proposed 2d Am. Compl. ¶ 6), that defendants falsely redacted the FBI reports before submitting them to the EEOC (id. ¶¶ 23, 24).

Under Rule 34(a)(1) a party produces items in the responding party's "possession, custody, or control."  Although defendants never expressly argue that they received the background check in the redacted form and (as stated above) plaintiff proposes to now allege that defendants in fact redacted the document, if defendants in fact received from the FBI a redacted report on plaintiff's background check, plaintiff cannot complain if that redacted report is served to her by defendants as discovery (or provided to the EEOC in response to her charges).  On the present record before this Court, the redactions appear to be made by the FBI, for that agency would know the sources for information and the charge for the fingerprints in its records.  It is unlikely the FBI would instruct third parties (such as defendants here) to redact the report for law enforcement purposes, because such a redaction would require disclosure of the original information (with law enforcement sources and methods) to defendants.  The background check concludes with a disclaimer that the FBI was presenting it for limited purposes that are "regulated by law" and that the information could be used only for the purpose requested.  Thus, defendants would be restricted in disseminating that information.

If, however, defendants somehow redacted the background check report, they would have done so at the insistence and direction of the FBI (the agency with the law enforcement privilege), for how else would defendants know which items to excise.  Furthermore, the term "person of interest" is an FBI term of art presented in the background check generated by the FBI.  Despite plaintiff's argument that "person of interest" is not an FBI designation (cf. Docket No. 61, Pl. Reply at 8), that agency (and clearly not defendants) used this term in listing what that report termed "charges" with the fingerprints that were analyzed.  Again, the FBI (and not

defendants) authored the background check report including the phrase "person of interest," therefore, that agency used the phrase.

Defendants have not disclosed whether they have seen the <u>unredacted</u> background check or independently inquired what "person of interest" meant. Defendants did not submit in response to these motions any privilege log which listed the unredacted FBI report and citing rationale for not producing it. Instead, it appears that defendants received the excised background check with questionable entries and reached the decision not to hire plaintiff because of it; later, defendants submitted the redacted form to the EEOC and to plaintiff in discovery. As the FBI reported to plaintiff on September 6, 2018 (Docket No. 66, Pl. 2d Motion Aff. Ex. B), defendants made their own decision based upon the information reported by the FBI in the background check.

In their supplemental response to plaintiff's discovery demands, defendants contended that plaintiff underwent two background checks, one from BIG for Randstad and the one by the FBI, with plaintiff failing the latter (Docket No. 57, Ex. 3, Defs.' Supp'al Objections & Responses to Pl.'s Am. First Set of Interrog. and Requests, at 7). According to the attachment to the Complaint (from plaintiff's EEOC complaint), the BIG background check passed plaintiff, including the international criminal background check (Docket No. 1, Compl., Ex. 5, at page 31 of 69). The background check from BIG had an international criminal check that was done separately and provided after the FBI check (<u>see</u> <u>id.</u> at 9). As discussed above, plaintiff in fact underwent <u>three</u> background checks, if the second BIG international criminal check is separately counted.

Passing the FBI background check, however, was a prerequisite for hiring in defendants' Public Sector Lockbox unit (id. at 7). Defendants' hiring decision hinged on the FBI check. For plaintiff's motions to compel here, **defendants have adequately produced documents in their possession, custody, and control** (this assumes that they received the redacted FBI check and not the unredacted version). Plaintiff may have discovery inquiry relevant to this case on how defendants handled the information from the FBI report that plaintiff was identified as a "person of interest" as well as whether defendants ever received the unredacted version of the FBI report. Therefore, plaintiff's motions on this ground is **denied in part**; the farthest plaintiff can inquire is whether defendants saw an unredacted version of the FBI report.

C.      Responsive Documents [Item G]

Plaintiff's remaining document demands seek information surrounding her applications and interviews. Request Number 1 seeks information about the use of an office near the reception area in the building of her interview (Docket No. 57, Ex. 3, Defs.' Supp'al Objections & Responses to Pl.'s Am. First Set of Interrog. and Requests, at 3-4). Next, she asked about the time defendants used to hire other temporary employees (id. at 4-5). In her third request, she asked if any Muslim females who work at defendants' business could be identified by their hair covering (id. at 5). In Request Number 4, plaintiff asked about her first background check, from Randstad, when defendants received the results and whether it included an international background check (id. at 6). Request Number 5 asks the method defendants used to obtain fingerprints for the FBI background check (id. at 7). Request Number 6 asks if defendants sought a second background check from Randstad, and then detailed communication between defendants and Randstad about this second check (id. at 8); this request is addressed above (at

part III.A.). In Request Number 7, plaintiff seeks confirmation of receipt of her application for the cash and trade processing representative job (<u>id.</u> at 9). In Request Number 8, plaintiff seeks the date when defendants informed Randstad that plaintiff did not fulfill the background check requirements (<u>id.</u> at 10) and Request Number 9 asked if defendants explained to Randstad the reason for the background check failure (<u>id.</u> at 11), while Request Number 10 asked if defendants afforded plaintiff an explanation (<u>id.</u> at 12). In Request Number 11, plaintiff asks if defendants gave her a copy of the FBI background check and the opportunity to explain, challenge, or ensure correct information was provided prior to the denial of the hiring (<u>id.</u>). In Request Number 12, plaintiff ask for defendants' definition of a "person of interest" as stated in the FBI background check results (<u>id.</u> at 13). In Request Number 13, plaintiff seeks confirmation that defendants' Ethics Work Office received her complaint of alleged discrimination (<u>id.</u>). Request Number 14 asks what response defendants gave to plaintiff's mailed letter alleging discrimination (<u>id.</u> at 14). In Request Number 15, plaintiff wants identified everyone involved in the hiring process (<u>id.</u> at 15). In Request Number 16, plaintiff seeks defendants' background check requirements and hiring policies at the time of the decision not to hire her and subsequent policies (<u>id.</u>). In Request Number 17, plaintiff wants identified every investigator on behalf of defendants (<u>id.</u> at 17) and in Request Number 18, she seeks documents and transcripts concerning communications under the prior request (<u>id.</u>). In response to Request Number 19, plaintiff wants from 2015 to the present the number of persons who complained of employment discrimination (<u>id.</u> at 18). Finally, in Request Number 20, plaintiff wants identified those who answered this discover (<u>id.</u> at 19).

For each of these requests, defendants raise numerous objections (see generally id.). Where defendants respond or produce material, this Court will note those responses in addressing each request.

For Request Number 1, defendants discussed the nature of the Public Sector Lockbox unit (id. at 4) without discussing what occurred in the entrance office. In addition to the vagueness and overbreadth objections defendants raise (id.), it is unclear from the request how it is relevant to any claims in this case. Defendants **need not respond to this request**.

In Request Number 2, after objecting defendants argue that the time to hire an employee for the Public Sector Lockbox unit varies with each applicant (id. at 5). Defendants **can amplify this response by stating the range of time (if known) for processing successful Public Sector Lockbox applicants or the average time in processing those applicants**. Therefore, plaintiff's motions to compel are **granted** as to this request.

In Request Number 3, defendants assert that they do not maintain records in their human resources departments that identify the religion of their employees. This response **is sufficient** and all parties are bound to this response, especially if defendants find by other means employees that could be identified as Muslim.

In Request Number 4, defendants (also relying upon this response for later requests) contend that the BIG background check was irrelevant to their hiring decision and that the FBI report was dispositive (id. at 6-7). They recounted the timing of the first BIG report in October 2015 (id. at 6). This Court earlier discussed the three background checks plaintiff endured and the conclusion that the FBI background check was the relevant one.

In Request Number 5 and following objections, defendants state that plaintiff was fingerprinted on or about October 23, 2015, at defendants' Getzville facility. The FBI background check was completed later that day, but other background checks were outstanding at that time. (Id. at 8.) Thus, defendants disclosed the methods used to obtain plaintiff's fingerprints that eventually were analyzed and reported in the FBI check. That response **is sufficient** and plaintiff's motions on this ground are **denied**.

As for Request Number 6 and the so-called second background check, this Court discussed that BIG international criminal check above and found that it was not relevant to issues in this case because defendants' hiring decision was based only upon the FBI report. Defendants' response, referring to their answer to Request Number 4, recounted the timing of BIG's international criminal check in November 2015. This response also **is sufficient** to plaintiff's demand; plaintiff's motions are **denied** here.

On plaintiff's Request Number 7 and whether defendants acknowledged receipt of her direct application to them, defendants argue that plaintiff applied for several positions (including internal employment opportunities) and that further research was required. Defendants are **to complete their searches for relevant, non-privileged items responsive to this request and provide a privilege log for such claimed privileged items that would be responsive to this request**. Thus, on this item, plaintiff's motions to compel are **granted**.

In Request Number 8, defendants answer that they informed Randstad of the FBI background check (hence not meeting defendants' job requirements) on December 16, 2015 (id. at 11). This **is responsive to plaintiff's request** and her motions to compel this answer are **denied as moot**.

In Request Number 9, defendants explain that they did not know what "person of interest" meant in the FBI report and that the report was privileged even from Randstad (id.). Plaintiff's question, however, was whether defendants explained to Randstad "the reason behind the background check related employment denial." What defendants told or did not tell Randstad does not appear to be relevant to plaintiff's claims or defendants' defenses. What may have occurred was that defendants informed Randstad that plaintiff failed the FBI background check without further elaboration, leaving Randstad's representative to inform plaintiff of the bad news.

Similarly, Request Number 10, defendants argue what little they know or can disclose about the FBI's processes. Again, the request is whether defendants explained to plaintiff the reason from the background check denial. From what is alleged in these motions, defendants did not. First, Randstad stated that plaintiff's application was denied because she did not pass defendants' background check. Then, plaintiff wrote directly to defendants for an explanation that was never given. Absent documents not mentioned or disclosed in response to plaintiff's requests or her motions, defendants did not explain their reasons for not hiring her, until she commenced this action. Defendants are left with this response.

As for Request Number 11, whether plaintiff was afforded an opportunity to rebut the FBI check, defendants raise various objections and do not address this question. But as with Request Number 10, defendants' actions showed that they did not afford plaintiff an opportunity to rebut that background check. If there is non-privileged evidence to the contrary, defendants have not produced it. Defendants' first objection (id. at 12) that plaintiff had equal access to information to answer this request is valid; plaintiff would know from her end what attempts she

made to challenge the background check and the responses (if any she received from defendants).

In Request Number 12, defendants rely upon their response to Request Number 9 in not knowing why plaintiff was labeled a "person of interest" (id. at 13), thus not interpreting that phrase. While not a direct response, defendants' position here essentially is that they did not know what "person of interest" meant or its context but it did not wish to inquire or hire plaintiff due to that designation. This **suffices** as a response to plaintiff's discovery request.

In Request Number 13, where plaintiff asks if defendants' internal Ethics Office received her complaint about the handling of her employment application, defendants claim that Lauren Smith, a Citi's Employee Relations Advisor, contacted plaintiff in 2016 and, following defendants' internal investigation, concluded that the denial of employment was not based upon plaintiff's faith or nationality (id. at 14). Defendants offer to produce, subject to their confidentiality agreement, non-privileged documents (id.); defendants, if they have not already done so, **should produce those responsive documents**. In this regard, plaintiff's motions to compel are **granted** on this request. In Request Number 14, plaintiff sought the answer defendants gave when she notified them of the alleged discrimination. Defendants refer to their substantive answer to Request Number 13 (id. at 15). Again, if they have not done so already, defendants are to **produce responsive documents** and plaintiff's motions on this request also are **granted**.

In Request Number 15, defendants point to their initial disclosure identifying their witnesses as those who participated in the decision not to hire plaintiff (id. at 16, 15-16). This response **is sufficient** and plaintiff's motions on this request are **denied**.

As for Request Number 16, defendants agree to produce relevant, non-privileged documents responsive to this request (for copies of their background check requirements and associated hiring policies). Again, if they have yet to do so, defendants **are to produce those responsive, non-privileged documents** and a **privilege log identifying otherwise responsive documents defendants deemed are privileged**. In this regard, plaintiff's motions to compel are **granted** as to this request. Similarly, in Request Number 17, defendants refer to their initial disclosure regarding those who participated in investigating plaintiff's claim (<u>id.</u> at 17). As a result, defendants **are to produce those responsive, non-privileged documents** and a **privilege log identifying otherwise responsive documents defendants deemed are privileged**; plaintiff's motions to compel are **granted** as to this request as well. In Request Number 18, plaintiff seeks documents and transcripts of communications from that investigation. Again, defendants agree to produce non-privileged, relevant items (<u>id.</u> at 18). Once again, defendants **are to produce those responsive, non-privileged documents** and a **privilege log identifying otherwise responsive documents defendants deemed are privileged**. In this regard, plaintiff's motions to compel are **granted** as to this request.

In Request Number 19, plaintiff ask for employment discrimination complaints against defendants from 2015 to present. This request is not limited to applicants similarly situated to plaintiff and is thus overly broad (<u>see id.</u> at 18-19; Docket No. 56, Defs. Memo. at 7). Defendants appropriately objected to this request; plaintiff's motion to compel its answer is **denied**.

Finally, in Request Number 20, plaintiff seeks the names, titles, locations, and functions of those who assisted in answering her requests. Defendants refused to specify who answered,

instead saying the answers to the First Requests "were prepared by Defendants and the undersigned counsel" (Docket No. 57, Ex. 3, at 19).

Plaintiff's requests in these motions are both Interrogatories and document requests; this last request really is an Interrogatory. Under Federal Rule 33, an Interrogatory to a corporate entity (such as defendants here) must be answered by "any officer or agent [of the corporation], who must furnish the information available to the party," Fed. R. Civ. P. 33(b)(1)(B). This Court, in EEOC v. Sterling Jewelers Inc., No. 08CV706, 2012 U.S. Dist. LEXIS 67220 (W.D.N.Y. May 14, 2012) (McCarthy, Mag. J.), held that the EEOC had to answer Sterling Jewelers' Interrogatory about which attorneys from that agency answered the Interrogatories posed, id. at *13-14. There, Sterling's first interrogatory requested that the EEOC identify each person who provided information used to answer these interrogatories, with the agency responding that its unspecified attorneys answered, id. at *13-14. Sterling complained, as plaintiff does here, that that answer was insufficient because it failed to identify the attorneys who answered and the specific Interrogatory they answered, id. at *14. With the EEOC's silence on this point, Magistrate Judge McCarthy granted Sterling's motion to compel this answer, id.

Here, defendants responded vaguely that defendants and undersigned counsel answered these requests without specifying which person responded to which request. Saying that "Defendants," four corporate entities, prepared the responses gives very little information to plaintiff, since no corporate officer or agent was identified as participating in answering this request. The only objection stated was that the request was "disproportionate to the needs of this case" (id. at 19); defendants do not raise attorney work product or other privileges against this disclosure. Identifying the names and titles of those, particularly within the corporate defendants

23

who responded and as to which response that person is responsible for is not disproportionate to the needs of this case. Plaintiff's motions to compel this final request are **granted**.

****

Therefore, plaintiff's motions (Docket Nos. 54, 66) to compel responses to her remaining Interrogatories and document requests [Item G], are **granted in part, denied in part, or deemed moot** from defendants' responses as indicated above.

IV.    Plaintiff's Motion to Extend Time to Identify Expert and Amending the Schedule

Finally, plaintiff's motions (Docket No. 54, 66) to extend her time to identify her expert are **granted in part**. Upon resolution of the discovery issues above and having held the Scheduling Order (Docket No. 35) in abeyance pending such a resolution (Docket Nos. 55, 62), an amended schedule to allow time for both sides to complete discovery and proceed with disposition of this case would be in order. Plaintiff, however, also has pending her motion for leave to amend the Complaint again (Docket No. 68). Briefing for that motion ends in November 2018 (Docket No. 69). Obviously, amending the schedule in this case is dependent upon whether leave to amend the Complaint is granted. If such leave is granted, plaintiff's claims (as well as defendants' defenses to them) may change, requiring additional discovery. If denied, this Court still intends to reset the remaining pretrial deadlines to reflect the parties' needs to complete discovery and ultimately to conclude this action. Either way, the Scheduling Order will have deadlines reset but as of now only contingently.

For the present, overall discovery is to be completed by **January 31, 2019**, affording ample time for the parties to complete the discovery noted in these motions as well as other outstanding discovery in this case as presently alleged. This Court recognizes and expects that

the disposition of the motion for leave to amend will alter this provisional discovery deadline. Subsequent deadlines (as well as revisiting this discovery deadline) will be set in the Order considering the motion for leave to amend (Docket No. 68).

CONCLUSION

For the reasons stated above, plaintiff's motions (Docket Nos. 54, 66) to compel is **granted in part, denied in part,** as stated above. Plaintiff's motions (id.) to extend her time to identify experts is **granted** and an amended schedule will be entered upon resolution of plaintiff's pending motion for leave to amend the Complaint (Docket No. 68).

A copy of this Order will be mailed to plaintiff at her address of record by Chambers of the undersigned.

So Ordered.

/s/ Hugh B. Scott

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
      October 4, 2018