UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NOOR ALJARAH,

                              Plaintiff,

                                                              **Hon. Hugh B. Scott**

                                                              16CV812G

                              v.                              **Order**


CITIGROUP GLOBAL MARKET INC., et al.,

                              Defendants.

_____

        Before the Court are two series of motions by a litigant proceeding pro se.  First is

plaintiff's motion for leave to amend (again) her Complaint (Docket No. 68).  Second, plaintiff

moved for in camera inspection of an unredacted Federal Bureau of Investigation ("FBI")

background check conducted on her (Docket Nos. 74, 76).  Production of this background check

has led to the motions considered in this Order.  Pending when this motion was filed was

plaintiff's initial motions to compel (Docket Nos. 54, 66); on October 4, 2018, this Court entered

an Order on those motions (Docket No. 70), familiarity with that decision is presumed.  What

remains for action on the motions to compel is resetting deadlines for the Scheduling Order

(Docket No. 54; see Docket Nos. 35, 70-71).

        After briefing of both motions[1], this Court decided (A) that both sets of motions needed

to be considered together since they involve the common issue of the unredacted background

_____

        [1]Responses to Docket No. 68 were due by November 6, 2018, and plaintiff's reply due November 13, 2018,
Docket No. 69.  Defendants duly responded, Docket No. 72, and plaintiff replied, Docket No. 73.

check documents, and (B) that the <u>in camera</u> review motions would be considered first, then

plaintiff's motion for leave to amend the Complaint.

BACKGROUND

According to the October 4th Order (Docket No. 70, at 3-6), plaintiff initially sued

defendant Citigroup Global Market Inc. (Docket No. 1) alleging its violation of Title VII,

42 U.S.C. §§ 2000e to 2000e-17.  Plaintiff alleged that defendant failed to hire her due to her

religion (Muslim) and national origin (Iraqi) (<u>id.</u>).  Citigroup Global Market then moved to

dismiss, in part arguing that it was not a proper party (Docket No. 5; <u>see generally</u> Docket No. 6,

Def. Memo. at 4-5; Docket No. 8, Decl. of Louis Santangelo, director and associate general

counsel of Citigroup, Inc.).  In support of this motion, defense counsel included the redacted

version of plaintiff's background check conducted by the FBI (Docket No. 7, Def. Citigroup

Global Market Atty. Decl. ¶ 3, Ex. 1).  The deletions, apparently by the FBI[2], were either to

preserve law enforcement privilege, with the United States Department of Justice and the FBI

claiming that disclosure of such information would impede or impair the effectiveness of

investigation techniques, methods, or procedures of the agency; or to prevent the unwarranted

invasion of personal privacy (<u>id.</u>, Ex. 1, at 2), such as disclosure of plaintiff's Social Security

number, <u>see also</u> Fed. R. Civ. P. 5.2(a)(1).  The law enforcement redactions appear to eliminate

the names of sources that identified plaintiff as a "person of interest" for the fingerprints the

agency received on May 31, 2013, and November 22, 2013 (<u>id.</u>, Ex. 1).  Also redacted was the

---

Responses to Docket Nos. 74 and 76 (including <u>in camera</u> production of the background check) were due by December 7, 2018, with reply by December 14, 2018, Docket Nos. 75, 77.  Defendants responded and stated their intention to submit to Chambers for <u>in camera</u> inspection the unredacted background check documents, Docket No. 79.  The United States of America then filed a Notice of Potential Participation, Docket No. 78, discussed below.  Plaintiff replied, Docket No. 80.

[2]Initially it was not clear who redacted.

second charge against the person fingerprinted (id.)[3]. The FBI report concludes that "all arrest entries contained in this FBI record are based on fingerprint comparisons and pertain to the same individual," with the disclaimer that "the use of this record is regulated by law. It is provided for official use only and may be used only for the purpose requested" (id., Ex. 1 at 10). This redacted report was at issue in plaintiff's motions to compel (see Docket No. 70, Order at 3-4, 13-16).

On January 6, 2017, the parties stipulated to add two defendants, Citigroup Technology, Inc., and Citicorp North America, Inc. (Docket No. 11; see also Docket No. 21). On February 26, 2018, plaintiff again moved to amend the Complaint to add Citigroup Inc. as a fourth defendant (Docket No. 43). That motion was granted (Docket No. 46). Plaintiff served and filed the Amended Complaint (Docket No. 49, filed Mar. 28, 2018) and defendants (hereinafter to identify all four Citigroup defendants named) answered (Docket No. 50).

*Amended Complaint (Docket No. 49) and Current Scheduling Order (Docket No. 35)*

In her Amended Complaint (Docket No. 49), plaintiff alleges intentional discrimination in hiring that defendants refused to hire her because of her religion and national origin (id. at 1). She further alleges that defendants discriminated against plaintiff based on her nationality and religion inferred by defendants' security personnel from her presence, photographs, and identification which all showed her wearing traditional Muslim headscarf or hijab (id. at 2). In October 2015, plaintiff applied for and was interviewed for the position of data entry clerk with defendants through Randstad Staffing Agency ("Randstad") (id.). Part of the application

---

[3]For example, in the FBI background check read "Charge 1—this subject has been identified by [redacted] as a person of interest, for additional information contact [redacted] at com [redacted] or [redacted]
   "Charge 2—[redacted]." Docket No. 7, Def. Atty. Decl. Ex. 1, at 4.

process, plaintiff submitted to a background check and, despite coming back clear, security personnel insisted plaintiff undergo a second international background check (id. at 3, Ex. B (credit check)).  While waiting for this application to be considered, plaintiff applied for permanent positions with defendants and was offered a temporary position with them but needed to wait for defendants' security office to clear her to start (id. at 3).  After interviews and one email notifying her of interest in the Citigroup Lockbox Management group, on December 16, 2015, plaintiff received a second email from Randstad stating that it received word from defendants that plaintiff had not passed a background check and therefore could not be hired (id. at 4).  On December 21, 2015, plaintiff wrote to defendants requesting an official reason for denying her employment but defendants never responded (id.).  In January 2016, plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") and that agency issued a Right to Sue Letter (id. at 2, Ex. A).

Under the current Scheduling Order (Docket No. 35, Order of Nov. 8, 2017) and prior to the October 4 Order, amendment of pleadings was due by March 1, 2018, plaintiff's expert identification was due by June 4, 2018, with discovery to be completed by July 18, 2018. Plaintiff in her motions to compel (Docket Nos. 54, 66) also sought extension of time to provide her expert disclosure (Docket Nos. 54, 66).  This Court held in abeyance the deadlines in the current Scheduling Order while the motions to compel were pending (Docket Nos. 55, 62).  On October 4, 2018, in deciding those motions, this Court also established a provisional discovery deadline for January 31, 2019, with a definitive deadline to be set upon disposition of the present motion for leave to amend (Docket No. 70, Order of Oct. 4, 2018, at 24-25; see also Docket No. 71).

*Plaintiff's Present Motion for Leave (Again) to Amend the Complaint (Docket No. 68)*

On September 21, 2018, plaintiff filed her present motion for leave to again amend the Complaint (Docket No. 68). From this Court's comparison of the proposed amendment (id., Ex.) to the existing Amended Complaint (Docket No. 49; see also Docket No. 72, Defs. Memo. at 4), cf. W.D.N.Y. Loc. Civ. R. 15(b) (except for pro se litigants, parties seeking leave to amend are to file a redline version of the amended pleading, showing proposed changes), plaintiff seeks to add allegations about the redactions from her FBI background check report that was eventually produced by defendants (first to the EEOC and then to plaintiff in discovery and to this Court in defendant Citigroup Global Market's motion to dismiss, Docket No. 6). First, plaintiff newly alleges jurisdiction under this Court's supplemental jurisdiction, 28 U.S.C. § 1367, for her claims under New York State Human Rights Law, N.Y. Exec. Law §§ 290-97 (Docket No. 68, Pl. proposed 2d Am. Compl. at 1), although plaintiff does not allege distinct claims under New York law. Her next additional allegation claims that defendants "disrespected her legal rights" by using her fingerprints and identification without her consent or permission by submitting them for an unnecessary background check (id. ¶ 5). She further would allege that defendants "unlawfully and intentionally concealed documents and falsely redacted Plaintiff's FBI report upon Law Enforcement Privilege to deprive Plaintiff of her rights under Title VII" (id. ¶ 6; see also id. ¶¶ 15-16, 23). She plans to add discussion of the EEOC proceedings on her complaint to that agency (id. ¶¶ 21-23). Plaintiff also would eliminate her earlier allegations that defendants failed to comply with the Fair Credit Reporting Act and that defendants' security office discriminated against her by delaying processing her employment application (cf. Docket No. 49, Am. Compl. at 4-5). The proposed amendment also has stylistic changes (in part recognizing

that she is suing multiple defendants or to restructure the jurisdictional allegations) and some fleshing out of her damages allegations.

Plaintiff bases her new allegations from information she learned from receipt of the EEOC investigation documents from her claim (Docket No. 68, Pl. Aff./Affirm. at 1). Plaintiff explains that she briefly had pro bono counsel but that counsel withdrew "leaving the Plaintiff with no discovery or information regarding the Court Scheduling Order" (id. ¶ 2). Once she obtained that Scheduling Order, plaintiff moved quickly to comply with discovery deadlines (id. ¶ 3), although the deadline for motions to amend pleadings has passed. Despite what plaintiff terms defense obstruction (see id. ¶¶ 4-5), plaintiff conducted her own investigation, collecting documents from the EEOC and the FBI (id. ¶ 5). She argues that the proposed amendments do not change the nature of relief requested and was filed in good faith "as soon as reasonably possible after the facts became available to the plaintiff as a result of [her] discovery" (id. ¶ 6). The amendments relate back to the earlier pleading and "adds newly uncovered facts that would cure the defects in the" earlier pleading (id. ¶ 7). Plaintiff denies any surprise or other prejudice to the defense and that the amendment would not delay eventual trial of this action (id. ¶¶ 8-9). She concludes that, "in the interests of justice and the absence of undue prejudice to Defendants" plaintiff seeks leave again to amend (id. at 3).

After noting defense production to plaintiff (Docket No. 72, Defs. Atty. Decl. ¶¶ 3-5) and that plaintiff did not state her intention to amend her Complaint (id. ¶ 5), defendants argue that plaintiff's present motion is untimely under the Scheduling Order (Docket No. 72, Defs. Memo. at 5-7). As for the proposed new claim that defendants mislead the EEOC, defendants counter that raising this claim would be futile and noted that the EEOC nevertheless entered a Right to

Sue letter (id. at 12).  Defendants next argue that, if Rule 15 still applies to this untimely motion, plaintiff unduly delayed asserting her New York State Human Rights Law claim, despite her pro se status (id. at 8-9, see Galet v. Carolace Embroidery Prods. Co., No. 91 Civ. 7991, 1994 U.S. Dist. LEXIS 14060, at *17 (S.D.N.Y. Oct. 5, 1994) (Sotomayor, J.)), and such claims would be futile because plaintiff cannot establish an inference of discrimination in the decision not to hire her (id. at 11-12).  Plaintiff had the redacted FBI background check report since June 2018, yet she waited until September 21, 2018, to move to amend (id. at 9).  Defendants claim that they would be prejudiced if the amendment is granted because of the amount of time expended in discovery to date and that the amendment is in fact a fishing expedition (id. at 9-10).  Finally, as for plaintiff's new claims that defendants abused access to her personal data, defendants conclude that these claims are also futile because plaintiff was being disingenuous in claiming that she did not consent to being fingerprinted (id. at 12-13).

In reply, plaintiff argues that her motion was not made in bad faith and relief will not unduly prejudice defendants (Docket No. 73, Pl. Reply at 2-10), arguing defendants' refusal to produce discovery has caused delay in this action (id. at 5-10).  Plaintiff contends that defendants made false or misleading statements to the EEOC (id. at 11-12), including the redactions of the FBI background check report submitted to the EEOC (id. at 13-14).  Plaintiff filed a Freedom of Information Act request with the FBI, which belies the allegation that plaintiff was a "person of interest" as identified in the background check (id. at 14, Ex. K).  She concludes that the new claims would not necessitate additional discovery and plaintiff has no more discovery demands beyond what was ordered in the October 4th Order (id. at 14).

*Plaintiff's <u>in camera</u> Motion (Docket Nos. 74, 76)*

Plaintiff then filed two motions for <u>in camera</u> relief (Docket Nos. 74, 76). As noted in the second briefing Order (Docket No. 77), the only changes in these two motions appear to reorder and add exhibits to the original motion (<u>id.</u>), thus the first motion was administratively terminated (<u>id.</u>). This Court will consider the second motion (Docket No. 76).

There, plaintiff moves for defendants to produce <u>in camera</u> the unredacted background check documents (<u>id.</u>). She notes that in 2017 she sought a copy of her FBI fingerprint check and that report cleared her of any criminal investigations (<u>id.</u> at 3; Docket No. 61, Pl. Reply, Ex. G, Oct. 13, 2017, letter FBI Criminal Justice Information Services Division to plaintiff). She argues that the FBI and Department of Justice did not instruct defendants to redact the background check report (Docket No. 76, at 5). Despite the October 4 Order setting the discovery deadline of January 31, 2019, plaintiff contends that defendants have not complied with the discovery Order, causing further delay in this case (<u>id.</u> at 6).

The briefing Orders (Docket Nos. 75, 77) gave defendants an alternative of opposing the motion or submitting the documents for <u>in camera</u> review. Defendants stated that they would separately submit to Chambers the documents for <u>in camera</u> review (Docket No. 79), which were received in Chambers on December 10, 2018. Defendants did that after consultation with the FBI and that agency stating that it had no objection to <u>in camera</u> review (<u>id.</u>).

Meanwhile, the United States Department of Justice (also referred to herein as the "Government") filed a Notice of Potential Participation in this action (Docket No. 78). There, the Government does not oppose <u>in camera</u> review but, if this Court considers a wider dissemination of the unredacted materials, the Government intends to intervene in this action,

under 28 U.S.C. § 517 (<u>id.</u> at 2).  Since the decision to intervene requires input from different agencies and internal approval within the Civil Division of the Justice Department, the Government sought several weeks for such approval and requested to advise this Court at least two weeks of the notice of the status of the approval process (<u>id.</u>).

Plaintiff replied on December 8, 2018, that defendants completely failed to respond to her motion, consistent with past evasion in discovery in this case (Docket No. 80, Pl. Reply at 1-2). Defense did not state who authorized the redactions at issue (<u>id.</u> at 2).  Plaintiff appears to welcome the Government's participation in this case (<u>id.</u>).

*Unredacted FBI Background Check*

This Court received in Chambers the unredacted background check.  The report expressly states the entity that identified plaintiff as a person of interest in the finger printing she had in 2013 and the contact information for that entity.  Although recorded by the FBI, an investigative agency, the report does not appear to arise from criminal investigations, despite the FBI form use of "arrest" and "charges".

Since this Court cannot yet describe in more detail the report, some background is in order.  In her employment application to defendants, plaintiff noted that she worked for the United States Military Command in Iraq from March 2007, requiring her to have successful background clearance to obtain and retain her position (<u>see</u> Docket No. 54, Pl. Motion, Ex. B, PL. Interrog., Interrog. Attachment 12).  The original Complaint attached several letters of recommendation from military and World Bank officials from 2007-13 attesting to plaintiff's skills and professionalism at work (Docket No. 1, Compl., Ex. 5, attachments to Dec. 21, 2015, letter to Human Resources, Citigroup Global Markets).

According to the letter the FBI's Criminal Justice Information Services Division sent to

plaintiff on October 13, 2017 (Docket No. 61, Pl. Reply, Ex. G), that Division

"serves as the nation's central repository and custodian for fingerprint identification and related [FBI Identity History Summary, or "IdHS"] information submitted by duly authorized local, state, tribal, federal, foreign and international criminal justice agencies. FBI fingerprint background checks for employment screening are effected through the comparison of an applicant's fingerprints with those maintained in the FBI Criminal File. The FBI's role in the matter is to perform the fingerprint search and return any resulting IdHS to the contributing agency without comment or interpretation,"

(id.; see also Docket No. 73, Pl. Reply, Ex. K).

DISCUSSION

I.      Applicable Standards

    A.      Discovery and Motions for In Camera Review

As previously noted (Docket No. 70, Order at 9-10), discovery under the Federal Rules is

intended to reveal relevant documents and testimony, but this process is supposed to occur with a

minimum of judicial intervention. See 8A Charles A. Wright, Arthur R. Miller & Richard L.

Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994). "Parties may

obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

defense–including the existence, description, nature, custody, condition, and location of any

documents or other tangible things and the identity and location of persons having knowledge of

any discoverable matter." Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2007).

Federal Rule 26(b)(2)(i) allows this Court to limit the scope and means for discovery if

"the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some

other source that is more convenient, less burdensome, or less expensive." Under Rule 26(c),

this Court may issue a protective Order to protect a party "from annoyance, embarrassment,

oppression, or undue burden or expense" by not having a proposed disclosure or discovery device, or conditioning the time and manner of that discovery. Fed. R. Civ. P. 26(c)(1), (1)(B)-(C); see id. R. 26(c)(1)(D) (limit the scope or the matters inquired into).

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an Order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A). Similarly, under Rule 26(c), prior to obtaining a protective order the movants must certify that they have in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court intervention, Fed. R. Civ. P. 26(c). Under Rule 26(c), the Court has power to protect against abuses in discovery. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). The appropriateness of a protective Order is a balance of the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought. Mitchell v. Fishbein, 227 F.R.D. 239, 245 (S.D.N.Y. 2005). This Court has broad discretion in issuing such a protective Order. Seattle Times, supra, 467 U.S. at 36.

Rule 34(a)(1) governs production of documents and other tangible items. A requesting party may serve a request, within the scope of Rule 26(b) to produce and permit inspection, copying items "in the responding party's possession, custody, *or* control," Fed. R. Civ. P. 34(a)(1) (emphasis added), such as documents, id. R. 34(a)(1)(A). "Control" under this rule is "construed broadly to encompass documents that the respondent has 'the legal right, authority, or practical ability to obtain . . . upon demand,'" Chevron Corp. v. Salazar, 275 F.R.D. 437, 447 (S.D.N.Y. 2011) (quoting Dietrich v. Bauer, No. 95 Civ. 7051, 2000 U.S. Dist. LEXIS 11729

(S.D.N.Y. Aug. 16, 2000)).  Where the respondent contests its ability to produce the document, the requesting parties bear the burden of demonstrating the respondent's control, In re Flag Telecom Holdings, Ltd. Sec. Litig., 236 F.R.D. 177, 180 (S.D.N.Y. 2006); Chevron Corp., supra, 275 F.R.D. at 447, since the issue of the degree of respondent's control is a question of fact, Gross v. Lunduski, 304 F.R.D. 136, 142 (W.D.N.Y. 2014) (Foschio, Mag. J.).

        B.      Motion for Leave to Amend

        1.      Rule 15

Under Federal Rule of Civil Procedure 15(a) amendment of pleadings after the time to do so as of right requires either consent of all parties (apparently not present here) or by leave of the Court.  Under Rule 15(a) motions for leave to amend the complaint are to be freely given when justice requires.  Granting such leave is within the sound discretion of the Court.  Foman v. Davis, 371 U.S. 178, 182 (1962); Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971).  "In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be 'freely given.'"  Foman, supra, 371 U.S. at 182 (quoting Fed. R. Civ. P. 15(a)).

If a plaintiff is proceeding pro se, as here, leave to amend should be freely granted, Frazier v. Coughlin, 850 F.2d 129, 130 (2d Cir. 1988) (pro se should be freely afforded opportunity to amend).

2.      Rule 16

Under Rule 15(a), amendment of pleading after the time to do so as of right requires either consent of all parties (not present here) or by leave of the Court. Although Rule 15 has leave to amend freely granted, the timing of such motions for that leave is set when this Court issues a Scheduling Order setting the deadline for such motions, see Fed. R. Civ. P. 16(b)(3)(A); W.D.N.Y. Loc. Civ. R. 16(b)(4)(A); see also Parker v. Columbia Pictures Indus., 204 F.3d 326, 339-40 (2d Cir. 2000) (Docket No. 72, Defs. Memo. at 5). Scheduling Orders set a deadline for amendment of pleading and limit the time for amendments because "the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed,'" id. at 340 (quoting Fed. R. Civ. P. 16 advisory comm. Note, 1983 amend., discussion of subsection (b)).

Modification of a Scheduling Order is done only by this Court's Order, W.D.N.Y. Loc. Civ. R. 16(b), and upon a showing of good cause, Fed. R. Civ. P. 16(b)(4); see 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1522.1, at 230-31(Civil 2d ed. 1990); Carnite v. Granada Hosp. Group, 175 F.R.D. 439, 446 (W.D.N.Y. 1997) (Foschio, Mag. J.) (Report & Recommendation), adopted, 175 F.R.D. at 441 (Arcara, J.). "In the absence of some showing of why an extension is warranted, the scheduling order shall control." 6A Federal Practice and Procedure § 1522.1, at 231. This Court has broad discretion in preserving the integrity of its Scheduling Orders, see Barrett v. Atlantic Richfield Co., 95 F.3d 375, 380 (5th Cir. 1996), including the discretion to extend its deadlines when good cause is shown. Carnite addressed a represented plaintiff's failure to move to amend the Court's scheduling order to allow for the motion for leave to amend the Complaint and his failure to raise

13

"even [a] facially persuasive reason" to grant relief.  <u>Carnite</u>, <u>supra</u>, 175 F.R.D. at 448 (Foschio, Mag. J.).

II.    <u>In Camera</u> Review

Plaintiff's motion (Docket No. 76; <u>cf.</u> Docket No. 74) for <u>in camera</u> production of the background check documents is **deemed moot** given this Court's review of the <u>in camera</u> documents submitted by defendants.  Despite plaintiff's reply (<u>cf.</u> Docket No. 80), defendants did not respond contesting her motion but furnished for Court inspection the disputed document.

The redactions at issue covered the entity that obtained plaintiff's fingerprints in 2013 that the so-called charges, including contact information for that entity and unknown codes. From the redacted version of the report (Docket No. 7, Ex.1), the report refers to "arrested or received" for instances when fingerprints were collected and "charges" describing why the prints were collected.  Looking at the unredacted version (without revealing more), these criminal investigative terms may not be apt.  These instances of fingerprinting may not have arisen from a criminal investigation but may have been for a security clearance.  Note, plaintiff worked as an interpreter for the United States Military Command in Iraq and the World Bank.

The Department of Justice notice of potential participation in this case and defendants' filing indicating that they would supply the documents for this Court's review (Docket Nos. 78, 79) clearly show that defendants lack control over the background check documents plaintiff now seeks.  Rule 34(a)(1) only requires responding parties to produce what they have in their possession, custody, or <u>control</u>.  While defendants received and possessed the background check report, the redaction (the heart of the present motion practice) was dictated by a non-party, the FBI.  That agency conditioned the distribution of that report.  While disputing whether the FBI or

defendants redacted, plaintiff has not shown that defendants had "the legal right, authority, or practical ability to obtain . . . upon demand," Dietrich, supra, 2000 U.S. Dist. LEXIS 11729 (S.D.N.Y. Aug. 16, 2000), to produce this background check report without alteration. Ultimate production of this report hinges on the degree of control defendants have on the document and plaintiff's ability to establish defendants' legal right, authority, or practical ability to obtain the entirety of that document for production. With the Government's looming participation (see Docket No. 78) in this action on the disclosure question indicates the degree of control defendants have on that report.

Plaintiff's motion for in camera review is **mooted by this Court's review**. The in camera submission by defendants **will be filed under seal**. Plaintiff thus will need to move to compel its disclosure.

This next issue (implicit in plaintiff's present motion) is ultimate production of the report without redaction to plaintiff. This was the crux of plaintiff's initial motion to compel (e.g., Docket No. 54) and this Court held for that motion that defendants had produced the redacted version and that such production was adequate. This decision assumed that defendants only produced what they had "in their possession, custody, and control" (Docket No. 70, Order of Oct. 4, 2018, at 16, emphasis in original removed). With defendants in camera production, it is clear that they received the unredacted document but were instructed by the FBI how to distribute it. Plaintiff, if she still wants that unredacted version of the background check report, needs to **renew her motion to compel its production**. Prior to granting that relief, the Government may need to weigh in on whether this report should be produced to plaintiff without redaction (Docket No. 78). The Government indicated that its decision to intervene in this case

will take weeks because of its internal decision-making processes (id.). Therefore, plaintiff's renewal motion is due by **February 15, 2019** (allowing enough time for the Government to act), and plaintiff needs to send a copy of her motion papers to the United States Department of Justice to the trial attorney from the Civil Division who filed the Notice of Potential Participation (Docket No. 78), as a courtesy. That way, the Government will be aware of the proceedings and can decide whether to intervene based upon a more complete record.

III.     Leave to Amend Complaint

There are two issues to be considered with plaintiff's motion for leave to amend. First, whether plaintiff moved in a timely fashion or has good cause otherwise to act outside of the Scheduling Order deadline. Second, whether leave to amend should nevertheless be granted because justice requires; this inquiry reaches the issues of whether the proposed amendment is futile, whether it is dilatory or made in bad faith, or other grounds for denial of that leave.

A.     Timing of the Motion and Rule 16

Under the Scheduling Order, the motion is untimely without plaintiff seeking extension of that deadline. Motions for leave to amend were due on March 1, 2018 (Docket No. 35). Plaintiff had not moved to extend this deadline; given that she proceeded pro se since the entry of that Scheduling Order and the filing of this motion, this Court presumes that plaintiff intends to extend the deadline (nunc pro tunc) for her motion, see Frazier, supra, 850 F.2d at 130; see also Haines v. Kerner, 404 U.S. 519 (1972) (per curiam) (pleading of a pro se plaintiff is to be liberally construed).

Since the discovery of the unredacted background check documents is central to at least two other series of motions (as just discussed), this Court next considers whether plaintiff can

amend her complaint (despite the timeliness of the motion) to allege claims surrounding that production.

B. Should Leave to Amend Be Granted Under Rule 15?

Plaintiff seeks to add essentially a discovery dispute—the failure to produce the unredacted background check report—as a new cause of action.  Her motion for that relief (Docket No. 68) is **denied** as futile.

Plaintiff's prior motions for leave to amend either addressed Citigroup Global Market's objections raised in its motion to dismiss (Docket Nos. 11, 14, 15) or to add defendants (Docket No. 11).  Plaintiff moved to amend the Complaint again to add another defendant (Docket No. 43).  The latest proposed amendment would add claims surrounding the redaction of the FBI background check report, the same report that led to her denial of employment.  Plaintiff has not been posed with objections to her claims that repeated amendments attempt to correct.

Her amendment, however, is futile.  Plaintiff seeks an otherwise discovery sanction (cf. Fed. R. Civ. P. 37) by amending her Complaint.  As for plaintiff's new allegations surrounding the redaction to the background check, adding such claims would be futile and fail to state a claim.  Plaintiff has through the EEOC and motion to dismiss in this action the redacted background check.  The failure to produce the original background check report is not actionable as a cause of action.  Because defendants abided by a third party's conditions for distribution or dissemination of a document does not create a cause of action for the party seeking unfettered access to that document.  Plaintiff failed to establish defendants' liability or damages to her arising from production of only the redacted version of the background check report.  Plaintiff also has not shown that she is entitled to the unredacted document.  Under the Federal Rules of

Civil Procedure, some redaction would have been required, Fed. R. Civ. P. 5.2(a) (redaction of Social Security numbers). Under that Rule's 5.2(e), this Court for good cause may order further redaction of information, Fed. R. Civ. P. 5.2(e).

As for plaintiff's other proposed amendments to allege claims under the New York Human Rights Law, this Court enjoys supplemental jurisdiction over state law claims such as these. The New York law parallels (and in some cases goes beyond) Title VII and other federal civil rights laws. Plaintiff has not explained why she failed to raise these parallel state claims prior to this cycle of motions. Plaintiff has proceeded pro se and with pro bono representation, and has amended this Complaint a couple of times on her own (see Docket Nos. 14, 43). Leave to add this supplemental claim is **denied**.

Leave for plaintiff's amendments to have the Amended Complaint reflect that multiple defendants are charges and similar cosmetic changes **is granted**.

Given the above determination that plaintiff's new claims are futile, this Court does not need to reach arguments that their filing was either dilatory or prejudicial to defendants. Thus, plaintiff's motion for leave to amend again this Complaint (Docket No. 76) is **granted in part, denied in part** as discussed above. Plaintiff has until **February 1, 2019**, to file and serve her Amended Complaint consistent with this Order.

IV.     First Amended Scheduling Order

As noted in the Order on plaintiff's motions to compel (Docket No. 70; see also Docket Nos. 71, 54, 66 (plaintiff's motions for extension of the Scheduling Order deadlines)), the schedule for remaining pretrial activities in this case was dependent upon the resolution of the leave to amend motion. If plaintiff were granted leave to amend, defendants would need time to

answer the new charges and both sides would need time to conduct additional discovery on the new claims plaintiff raised. If leave were denied, then parties would need time to complete remaining discovery and subsequent deadlines needed to be reset. The Orders setting the discovery deadline for January 31, 2019 (Docket Nos. 70, 71), were contingent upon resolution of what claims are pending.

If this leave to amend motion were the only outstanding matter, this Court would set an amended Schedule for further pretrial activities in this case, amending the existing Scheduling Order (Docket No. 35; see also Docket Nos. 70, 71). The lingering issue of the FBI background check report now prevents the setting a new schedule. Plaintiff filing a formal motion to compel production of the unredacted (addressing defendants' control in the face of FBI restrictions), defendants' response, and the Government's participation over the question of ultimate disclosure of the unredacted background check to plaintiff delay setting an Amended Scheduling Order. One key unknown is how long it will take for the Government to decide to intervene.

Once that disclosure issue is resolved, an amended schedule can be entered. That schedule would set (or reset) deadlines for:

- Leave to further amend pleadings;

- Discovery completion;

- Dispositive motions before Chief Judge Geraci;

- The end of referral to Mediation.

Until there is that resolution (which relates to whether the Government intervenes or not), the discovery deadline **is extended to March 15, 2019**. This will afford plaintiff and defendants sufficient time for plaintiff to serve her Amended Complaint (by **February 1, 2019**), for

defendants to answer, and for the parties to complete the rest of the discovery. It also gives the parties (and the Government) sufficient time to resolve the Government intervention question and the ultimate production issue for the unredacted background check report. Again, this discovery deadline (and subsequent procedural deadlines) will change once the unredacted report issue is resolved and time is given to complete discovery.

Plaintiff's motions for extension of the former Scheduling Order deadlines (Docket Nos. 54, 66) **remains pending** until the Government decides on intervening in this matter.

CONCLUSION

For the reasons stated above, plaintiff's motions (Docket Nos. 74, 76) for in camera inspection of the unredacted FBI background check documents are **terminated (as for Docket No. 74, see Docket No. 77) and denied as moot (given this Court's in camera review** and plaintiff's motion (Docket No. 68) for leave to amend the Amended Complaint is **granted in part, denied in part** as discussed above. So much of plaintiff's motions (Docket No. 54, 66) for extension of discovery deadlines in the former Scheduling Order (Docket No. 54, 66; see Docket No. 35) are **granted** and the new deadlines are set forth above. Plaintiff has until **February 1, 2019**, to file and serve an Amended Complaint. If plaintiff intends to renew her motion to compel production of the unredacted FBI documents, that motion is due by **February 15, 2019**, with a courtesy copy sent to the United States Department of Justice, Civil Division, to the attention of the attorney who signed the Notice of Potential Participation (Docket No. 78). As discussed in detail, discovery in this action provisionally shall conclude by **March 15, 2019**.

Defendants' in camera submission will be filed **under seal**.

A copy of this Order will be mailed by Chambers to the pro se plaintiff's address of record. Court Clerk is instructed to forward a copy of this Order to counsel at the Civil Division of the United States Department of Justice who filed the Government's Notice of Potential Participation (see Docket No. 78).

So Ordered.

/s/ Hugh B. Scott

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
      December 14, 2018