UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NOOR ALJARAH,

                          Plaintiff,

**Hon. Hugh B. Scott**

16CV812G

                          v.

**Order**

CITIGROUP GLOBAL MARKET, et al.,

                          Defendants.

      Before the Court is continuation of a series of motions seeking production of the unredacted version of plaintiff's Federal Bureau of Investigation (or "FBI") background check (or "FBI Identity History Summary" or "IdHS" as identified by the United States, Docket No. 94, U.S. Memo. at 1-2; hereinafter this Court will refer to as "IdHS"). After plaintiff's prior motion to compel production of the IdHS (Docket No. 68, see Docket No. 81), she moved for its in camera inspection (Docket Nos. 70, 76; see Docket Nos. 81, 83 (unredacted IdHS, filed under seal)). Plaintiff now moves for production of the unredacted IdHS (Docket No. 88). Defendants are Citigroup Global Market, Citigroup Technology, Inc., Citicorp North America, Inc., and Citigroup, Inc.; collectively they are referred to as "defendants."

      Meanwhile, the United States (also referenced as "the Government"), through counsel from the United States Department of Justice Civil Division, indicated its interest in this question (Docket No. 78) and filed notices of its intention to intervene under 28 U.S.C. § 517 (Docket Nos. 92, 94). The Government also stated its intention to oppose plaintiff's motion to compel on

law enforcement privilege (see Docket No. 94, Gov't Memo. at 5-6). After ordering a more formal motion to intervene by March 7, 2019, responses to plaintiff's motion then were due by March 14, 2019, and plaintiff's reply due March 28, 2019 (Docket No. 93), which parties duly filed (Docket Nos. 96 (defendants), 97 (plaintiff's Objection and Motion to Strike)). This Court decided these motion on the submitted motion and notice.

Given the pending March 15, 2019, the discovery deadline (Docket No. 82) was held in abeyance pending resolution of plaintiff's present motion (Docket No. 95).

While this motion was pending, plaintiff again (see Docket Nos. 14, 43, 68, 76) moved for leave to amend the Complaint (Docket No. 98). Response to this motion is due April 26, 2019, and reply by May 3, 2019 (Docket No. 99).

BACKGROUND

*Procedural History*

Familiarity with prior Orders in this case (Docket No. 81, Order of Dec. 14, 2018; Docket No. 70, Order of Oct. 4, 2018) is presumed.

*Complaint (as later amended)*

Plaintiff, proceeding pro se (save a brief period when she had appointed counsel, Docket Nos. 23, 31, 40), initially sued defendant Citigroup Global Market Inc. (Docket No. 1) alleging its violation of Title VII, 42 U.S.C. §§ 2000e to 2000e-17. Plaintiff alleged that defendant failed to hire her due to her religion (Muslim) and national origin (Iraqi) (id.). Plaintiff amended her Complaint to add Citigroup defendants (Docket Nos. 11, 14, 15, 21, 43, 49).

Defendants answered an earlier version of the Amended Complaint (Docket No. 28) and then answered the further Amended Complaint (Docket No. 50).

2

On September 21, 2018, plaintiff sought to add allegations about the redaction of the IdHS (Docket No. 49; see Docket No. 72, Defs. Memo. at 4; Docket No. 81, Order of Dec. 14, 2018, at 5) and to add state and additional federal law claims (see Docket No. 81, Order of Dec. 14, 2018, at 5-6). This Court reviewed in camera the unredacted IdHS from defendants (Docket No. 83) and deemed that portion of plaintiff's motion for in camera production was deemed moot (Docket No. 81, Order at 14-17). Leave to amend the Complaint again was denied (id. at 17-18).

Plaintiff filed a further amended Complaint on January 7, 2019 (Docket No. 86). Here, she alleges that defendants violated Title VII in not hiring her due to her religion and national origin. Plaintiff moved to Buffalo in May 2014 as a transfer student, later seeking part time employment (id. ¶ 8). On October 2015, she applied to the Randstad Agency for temporary seasonal data entry clerk position at defendants' Getzville, New York, offices and she was hired (id. ¶ 9). Upon arriving at those offices, plaintiff believes that she was viewed with suspicion since she (as an Iraqi Muslim woman) wore a hijab (id. ¶ 10). On October 15, 2015, after joining Randstad, plaintiff was told (for the first time) that she needed to provide her fingerprints for an FBI background check before she could begin work (id. ¶ 11). Plaintiff went through that process and, on October 19, 2015, believed that she cleared the local and international background checks (id. ¶ 13). Plaintiff claims that defendants submitted her fingerprints to the FBI for a check if her name came up in the FBI's criminal database (id. ¶ 14). On October 26, 2015, defendants asked that plaintiff's fingerprints be submitted for a second check, a check plaintiff deems to have been unnecessary (id. ¶ 15). Plaintiff waited for word on whether she could start work and, in November 2015, she applied directly with defendants for another job (id.

3

¶ 16). On December 10, 2015, plaintiff was called by defendants' human resource representative and invited for an interview (id. ¶ 17). During that interview, defendants' management was surprised that plaintiff was not already working in the temporary position (id. ¶ 18). On December 14, 2015, plaintiff received an email from defendants expressing their interest to hire her (id. ¶ 19). On December 16, however, plaintiff received another email stating that she did not pass their background requirements and was told nothing else about that decision (id. ¶ 20) apparently relying upon the IdHS report that plaintiff was a "person of interest". Thus, plaintiff could not work either in the temporary position or directly with defendants (id. ¶ 21). She claims that defendants did this for discriminatory reasons and that the FBI criminal background check was unnecessary and not informative (id. ¶ 22; see id. ¶ 23). On December 21, 2015, plaintiff requested the reason for the adverse background check, but none was given. On January 14, 2016, plaintiff filed her administrative complaint before the Equal Employment Opportunity Commission (id. ¶¶ 24-28; Docket No. 1, Compl. at 7-9), setting the stage for commencing this action (see Docket No. 1, Compl. filed Oct. 12, 2016). Meanwhile, on January 11, 2016, the reporting agency declared that plaintiff was no longer a "person of interest" (Docket No. 94, Christman Decl. ¶ 13).

*Citigroup Global Market's Initial Motion to Dismiss (Docket No. 5)*

On January 5, 2017, defendant Citigroup Global Market moved to dismiss the initial Complaint, in part arguing that it was not a proper party (Docket No. 5; see generally Docket No. 6, Def. Memo. at 4-5; Docket No. 8, Decl. of Louis Santangelo, director and associate general counsel of Citigroup, Inc.). In support of this motion, defense counsel included the redacted version of plaintiff's IdHS (Docket No. 7, Def. Citigroup Global Market Atty. Decl. ¶ 3,

Ex. 1) at issue here. The deletions, by the FBI (see Docket No. 94, Michael Christman Decl. ¶¶ 15, 16), were either to preserve law enforcement privilege, with the United States Department of Justice and the FBI claiming that disclosure of such information would impede or impair the effectiveness of investigation techniques, methods, or procedures of the agency; or to prevent the unwarranted invasion of personal privacy (Docket No. 7, Def. Citigroup Global Market Atty. Decl., Ex. 1, at 2), such as disclosure of plaintiff's Social Security number, see also Fed. R. Civ. P. 5.2(a)(1). The law enforcement redactions appear to eliminate the names of sources that identified plaintiff as a "person of interest" for the fingerprints the agency received on May 31, 2013, and November 22, 2013 (id., Ex. 1). Also redacted was the second charge against the person fingerprinted (id.)[1]. The FBI report concludes that "all arrest entries contained in this FBI record are based on fingerprint comparisons and pertain to the same individual," with the disclaimer that "the use of this record is regulated by law. It is provided for official use only and may be used only for the purpose requested" (id., Ex. 1 at 10).

The motion to dismiss was denied (Docket No. 21).

*FBI IdHS and its Redactions*

In the Government's intervention notice, it specified the reason for redactions at issue (Docket No. 94, Christman Decl.). Certain parts of the Government's presentation were unclassified or unclassified but deemed "Law Enforcement Sensitive" "i.e., information the disclosure of which would impede or impair the effectiveness of an investigative technique,

---

[1] For example, in the FBI background check read
"Charge 1—this subject has been identified by [redacted] as a person of interest, for additional information contact [redacted] at com [redacted] or [redacted]
"Charge 2—[redacted].
Docket No. 7, Def. Atty. Decl. Ex. 1, at 4.

5

method or procedure of the FBI" (id. ¶ 4). The Criminal Justice Information Services Division of the FBI (or "CJIS") has a mandate to provide interstate exchange of IdHS records, such as in the FBI's Next Generation Identification System (or "NGI System") to provide national record searches for "criminal justice and other civil purposes," such as admissibility into this country for the Departments of State and Homeland Security. "The fingerprints contained in NGI are typically submitted as a result of arrests <u>or government employment</u>" (id. ¶ 6 (emphasis added)).

The Government asserts law enforcement privilege should preclude disclosure of the entire IdHS to plaintiff (Docket No. 94, Gov't Statement of Interest at 4-7). The Government contends that plaintiff cannot overcome the strong presumption against lifting this privilege merely for use as document production in this case (id. at 7-9). This privilege is essential to protect from disclosure Government techniques, methods, or procedure (id. at 9).

As obliquely described in a prior Order (Docket No. 81, Order of Dec. 14, 2018, at 14),

> "The redactions at issue covered the entity that obtained plaintiff's fingerprints in 2013 that the so-called charges, including contact information for that entity and unknown codes. From the redacted version of the report (Docket No. 7, Ex.1), the report refers to "arrested or received" for instances when fingerprints were collected and "charges" describing why the prints were collected. Looking at the unredacted version (without revealing more), these criminal investigative terms may not be apt. These instances of fingerprinting may not have arisen from a criminal investigation but may have been for a security clearance. Note, plaintiff worked as an interpreter for the United States Military Command in Iraq and the World Bank."

This Court reviewed the Government's <u>in camera</u> submission (Docket No. 83) and the redactions (as argued in the filed redacted version) reflect preservation of investigative methods, techniques, and/or procedures by deleting these facts as well as the identity of the agency(-ies) that identified (and then reclassified) plaintiff as a "person of interest."

Plaintiff, in support of this motion, explained that in 2013, to complete an application for a job with the World Bank, she had to be fingerprinted by the State Department to have her resume sent to the British Embassy in the International Zone in Baghdad (Docket No. 88, Pl. Motion at 7-8, Ex. F).

Defendants respond to plaintiff's motion to compel, noting the Government's law enforcement privilege (Docket No. 96, Defs. Response at 2; see Docket No. 94). The redactions to the IdHS were made by the FBI (Docket No. 96, Defs. Response at 2). Defendants thus conclude that they are not able (absent a Court Order) to produce the unredacted version of the IdHS, that they have produced "the only version of the FBI Background Check that they are authorized to produce" absent a contrary Order (id.). Defendants defer to this Court and the Department of Justice as to plaintiff's motion (id. at 3).

*Plaintiff's Objection Reply (Docket No. 97)*

Plaintiff replies by objecting to certain statements defendants made in their response and seeking their being stricken (Docket No. 97). Plaintiff moves to strike these offending passages without citing any authority for striking. She also seeks to prohibit defendants from future use or reference to the IdHS results in Court proceedings (id. at 6). First, plaintiff seeks to strike the underscored text at the first page of defendants' Memorandum (cf. Docket No. 96, Defs. Response at 1), "[p]laintiff brought this action after her application for employment as a Data Entry Clerk at Citi's Public Sector Lockbox unit" (Docket No. 97, Pl. Objection at 2) and "Citi notified Plaintiff (through Randstad Staffing Agency ("Randstad") that she would not be hired to work in its Public Sector Lockbox unit" (id. at 5). Plaintiff argues that defendants are "rewriting" her statement by adding "Public Sector" to justify her fingerprinting (id. at 1). She

7

adds that she was fingerprinted on October 21, 2015, 40 days before her Public Sector position interview with defendants in December 2015 (id.). Again, on the first page of defendants' Memorandum (Docket No. 96, Defs. Memo. at 1), plaintiff seeks to strike the following: "<u>Because Plaintiff's FBI Background Check revealed that she had been labeled a 'person of interest' by government authorities</u>," arguing that the fingerprint checks were obtained unlawfully (Docket No. 97, Pl. Objection at 3-5).

Plaintiff did not reply to the substance of defendants' response or to the Government's notice to intervene.

## DISCUSSION

I.  Applicable Standards

   A.   Intervention under Section 517

Rule 24 sets out the usual procedure for intervention. The Government contends that Congress gave the Attorney General (through the Solicitor General or any other officer) additional power to intervene in any state or federal district court action "to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of State, or to attend any other interest of the United States," 28 U.S.C. § 517. This Court has discretion to dictate the terms of the intervention, 6 <u>Moore's Federal Practice—Civil</u> § 24.23 (2019), including limiting the scope of intervention to minimize potential delay in the action, <u>id.</u>

   B.   Discovery

As previously noted (Docket No. 81, Order of Dec. 14, 2018, at 10-12), discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention. <u>See</u> 8A Charles A. Wright, Arthur

R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1).

Federal Rule 26(b)(2)(i) allows this Court to limit the scope and means for discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Under Rule 26(c), this Court may issue a protective Order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense" by not having a proposed disclosure or discovery device, or conditioning the time and manner of that discovery. Fed. R. Civ. P. 26(c)(1), (1)(B)-(C); see id. R. 26(c)(1)(D) (limit the scope or the matters inquired into).

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an Order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A). Similarly, under Rule 26(c), prior to obtaining a protective order the movants must certify that they have in good faith conferred or attempted to confer with the other affected parties to resolve the dispute without court intervention, Fed. R. Civ. P. 26(c). Under Rule 26(c), the Court has power to protect against abuses in discovery. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). The appropriateness of a protective Order is a balance of the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought. Mitchell v. Fishbein,

9

227 F.R.D. 239, 245 (S.D.N.Y. 2005). This Court has broad discretion in issuing such a protective Order. Seattle Times, supra, 467 U.S. at 36.

Rule 34(a)(1) governs production of documents and other tangible items. A requesting party may serve a request, within the scope of Rule 26(b) to produce and permit inspection, copying items "in the responding party's possession, custody, *or* control," Fed. R. Civ. P. 34(a)(1) (emphasis added), such as documents, id. R. 34(a)(1)(A). "Control" under this rule is "construed broadly to encompass documents that the respondent has 'the legal right, authority, or practical ability to obtain . . . upon demand,'" Chevron Corp. v. Salazar, 275 F.R.D. 437, 447 (S.D.N.Y. 2011) (quoting Dietrich v. Bauer, No. 95 Civ. 7051, 2000 U.S. Dist. LEXIS 11729 (S.D.N.Y. Aug. 16, 2000)). Where the respondent contests its ability to produce the document, the requesting parties bear the burden of demonstrating the respondent's control, In re Flag Telecom Holdings, Ltd. Sec. Litig., 236 F.R.D. 177, 180 (S.D.N.Y. 2006); Chevron Corp., supra, 275 F.R.D. at 447, since the issue of the degree of respondent's control is a question of fact, Gross v. Lunduski, 304 F.R.D. 136, 142 (W.D.N.Y. 2014) (Foschio, Mag. J.).

II.     Intervention

The United States is in this case as an intervenor solely on the question of production of the unredacted version of the IdHS. While the Government has interest in the extent of that disclosure to plaintiff, the Government does not have an interest in the overall case. The Government is the entity that invoked the law enforcement privilege that defendants were compelled to assert in producing the redacted version of the IdHS (see Docket No. 94, U.S. Statement of Interest at 4-10). That privilege is to protect law enforcement techniques and procedures, preserve confidentiality of sources, and safeguard the privacy of those involved in

the investigations, In re Dep't of Investigation of the City of N.Y., 856 F.2d 481, 484 (2d Cir. 1988) (id. at 4). The Government, as the party asserting this qualified privilege (and, by extension, defendants also asserting the privilege) bears the burden of showing that the privilege applies to the document at issue (id.), In re New York City, 607 F.3d 923, 940 (2d Cir. 2010). Invoking this privilege involves three steps: first, the party asserting the privilege bears the burden of showing that the privilege applies to the document; second, the Court balances public interest in nondisclosure against the need of the litigant for access; and, third, if the strong presumption against lifting the privilege is successfully rebutted, the Court must weigh the public interest in nondisclosure against the litigant's need for access (id. at 4-5), In re New York City, 607 F.3d at 944, 948, 945 n.22.

The Government (and by extension defendants) bore the burden showing the privilege applied to the IdHS. From in camera review of the IdHS (Docket No. 83) and the Government's in camera and ex parte Statement of Interest, the unredacted IdHS discloses investigative techniques and procedures. These techniques and procedures are not relevant to the claims and defenses in this employment discrimination case. As for the second step, balancing the interest in nondisclosure with plaintiff's interest in disclosure, the strong presumption against disclosure has not been overcome. Plaintiff seeks the unredacted document to show that defendants' refusal to hire her was based upon some illicit grounds. As discussed below, plaintiff does not need the precise document to establish this claim. As for the third step, the Government's need to not have its methods or techniques revealed through discovery in this case outweighs plaintiff's need for disclosure. From the facts revealed in this motion practice, plaintiff need not have the unredacted IdHS to prove its case.

The Government's notice of its intention to intervene (Docket Nos. 78, 82, 94) is **granted**. Since the Government's interest in this case is only in the scope of disclosure of the IdHS and not the underlying claims and defenses in this case, the Government's intervention is **limited** to this motion to compel. The Government's <u>in camera, ex parte</u> version of its Statement of Interest and supporting declaration will be **filed under seal**. As with the unredacted IdHS also filed under seal (Docket No. 83), **plaintiff shall not have access to these sealed records**. The Court Clerk is asked to add the United States as Intervenor, represented by Ms. Dena M. Roth, Esq., from the United States Department of Justice, Civil Division (<u>see, e.g.</u>, Docket No. 94, Statement).

III.     Motion to Compel Production of Unredacted Version of the IdHS

For this employment discrimination action, the questions are (1) whether plaintiff needs the unredacted version of IdHS for prosecuting this case and (2) whether defendants had in its possession, custody, or control the IdHS. Both sides in this case are in the dark why plaintiff was identified for a period as a "person of interest" in the IdHS, although defendants received the unredacted document but without apparent explanation of its contents.

This Court reviewed <u>in camera</u> the IdHS (Docket No. 83) and the Government's unredacted supporting declaration. Defendants (Docket No. 96, Defs. Response at 2) produced the IdHS as redacted by a third party, the FBI. Rule 34(a)(1) requires parties to produce only what is in their "possession, custody, or control." Courts have defined "control" of documents as "the legal right, authority or ability to obtain documents upon demand," <u>Camden Iron & Metal, Inc v. Marubeni America Corp.</u>, 138 F.R.D. 438, 441 (D.N.J. 1991) (Simandle, Mag. J.); <u>U.S. International Trade Comm'n v. ASAT, Inc.</u>, 411 F.3d 245, 254 (D.C. Cir. 2005); <u>Chevron Corp.</u>,

supra, 275 F.R.D. at 447; see also SEC v. Credit Bancorp, Ltd., 194 F.R.D. 469. 471 (S.D.N.Y. 2000). The burden is on the party seeking production, plaintiff here, to establish defense control over the documents, Camden Iron & Metal, supra, 138 F.R.D. at 441; In re Flag Telecom Holdings, supra, 236 F.R.D. at 180, and determining control turns on whether plaintiff can demonstrate that defendants having either the legal right, authority, or ability to obtain the IdHS, see Camden Iron & Metal, supra, 138 F.R.D. at 441.

Where a non-party (here the FBI) dictates to defendants the terms of disclosure of a document, defendants lack full control of the document for their production under Rule 34(a)(1) despite defendants have possession of the documents. Control in the cases cited above involved production from related corporations, e.g., Camden Iron & Metal, supra, 138 F.R.D. at 441-42 (parent-subsidiary). Here, defendants have no corporate affiliation with the United States Government or its agencies; they merely used the databases of the FBI to confirm plaintiff's record as a job applicant.

With third party redaction, defendants can only produce what they possess and control and no more. Defendants did so here, producing the redacted version of the IdHS. What has nagged this Court about plaintiff's quest in production of the complete IdHS is that the unredacted document she seeks was not redacted by defendants and was not truly in their full control. Defendants were bound by the privilege invoked not by them but by a non-party (until the limited intervention just ordered herein), the United States through the FBI. Plaintiff's motion to compel production (Docket No. 88) of the unredacted version of the IdHS (see Docket No. 83) is **denied**.

Plaintiff does not need the unredacted IdHS (Docket No. 83) to prosecute her Title VII claims. Defendants obtained the IdHS with what this Court now terms as a "flag" because of plaintiff's identification as a "person of interest." Subsequent disclosure in this motion practice showed that (1) plaintiff was not arrested or charged with any crime; (2) the "person of interest" designation by the Government is a third category in IdHS (after a suspect or witness), that is a person associated in some other way with an investigation (Docket No. 94, Christman Decl. ¶ 9); and (3) plaintiff later was removed as a "person of interest" on January 11, 2016, after defendants' negative hiring decision. The full content of this IdHS is not relevant to plaintiff's Title VII claims; what matters is how defendants construed the IdHS in reaching their hiring decision and what knowledge defendants had about the "person of interest" status that would convince them not to hire someone with that status. As she did in her motion to strike (Docket No. 97), plaintiff raises objections to the fingerprinting and the use of the fingerprint reports in the hiring process. Plaintiff does not need the unredacted report to pursue her claims.

The legitimacy of the redaction by the FBI (or the initial declaration of plaintiff as a "person of interest") is not before this Court. Plaintiff has no claim pending here surrounding the declaration that she was a "person of interest" or redaction of that information from the produced IdHS. Even if they were, the redacting party, the FBI, is not a defendant in this case. Currently, the Government is a limited Intervenor. Plaintiff and defendants had no role in the redaction process.

IV.  Plaintiff's Motion (Docket No. 97) to Strike

    A.  Scope of Plaintiff's Motion

Plaintiff seeks to strike certain statements both from defendants' response for this motion and preclude defense mention throughout this case. This Court **will not address the latter request at this time**, see also American Co-op. Serum Ass'n v. Anchor Serum Co., 38 F. Supp. 313, 315 (N.D. Ill. 1941) (court denied ruling on motions to strike papers and considered papers only for facts pertinent to the motion to quash and ignored other facts and arguments which went to the merits of the controversy); such evidentiary preclusion should await trial on a proper motion in limine or challenge if raised in defendants' motion for summary judgment.

    B.  Possible Authority for Plaintiff's Motion to Strike

Plaintiff does not cite any authority for this Court to strike portions of defendants' response. For pleadings, Rule 12(f) provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," with the Court acting on its own or upon motion. This response, however, is not in a pleading, see McNair v. Monsanto Co., 279 F. Supp. 2d 1290, 1298 (M.D. Ga. 2003) (rejecting plaintiffs' motion to strike exhibits in support of motion to transfer, finding that these exhibits were not pleadings); Reid v. Heartland Payment Sys., No. 17-4399, 2018 WL 488055, at *5 (E.D. Pa. Jan. 19, 2018) (denying motion to strike papers other than pleadings); Granger v. Gill Abstract Corp., 566 F. Supp. 2d 323, 335 (S.D.N.Y. 2008); Fed. R. Civ. P. 7(a) (listing pleadings). The court in McNair presented the better method for plaintiff to object to defendants' submission: "to voice their objections to the material submitted by Defendants, the proper procedure is for the Plaintiffs to file material controverting the affidavits, exhibits or statements submitted by the

Defendants and the Court would give the materials appropriate consideration and weigh in light of Plaintiffs' objections," McNair, supra, 279 F. Supp. 2d at 1298. This Court will consider plaintiff's latest motion as her controverting defendants' factual assertions as pertinent to a motion to compel.

This Court also considered Rule 11 as a possible authority to strike an offending pleading. Rule 11 requires striking an unsigned paper filed with the Court, Fed. R. Civ. P. 11(a). Signature of a paper represents that the "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and . . . the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information," id., R. 11(b)(3)-(4). To seek sanctions, the movant needs to file a separate Rule 11 motion from any other pending motion, give the opponent notice and 21 days for the opponent to withdraw the offending paper, id., R. 11(c)(2). Sanctions under this rule for a signed paper does not specifically include striking the paper, but the relief "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," with listed sanctions including "nonmonetary directives," penalties paid to the Court, or recovery of movant's attorney's fees, id., R. 11(c)(4). Since plaintiff here is proceeding pro se, she could not claim her attorney's fees.

Since plaintiff did not argue this was a Rule 11 violation or notified defendants and given them time to withdraw the offending paper and since she did not file a separate sanction motion, this Court will not treat this as a Rule 11 motion. This Court next considers whether to strike the offending passages for purposes of plaintiff's pending motion to compel.

C. Consideration of Offending Passages and Plaintiff's Underlying Motion to Compel

As for plaintiff's motion to compel and her motion to strike certain offending passages in response to that initial motion, this Court will address each offending text. Parties will note that these allegedly offending passages have little impact on the resolution of the motion to compel.

As for the "Public Lockbox" references (Docket No. 96, Defs. Memo. at 1), plaintiff alleges in her most recent Amended Complaint plaintiff refers to "Defendants' Lockbox Services" for the temporary job (e.g., Docket No. 86, Am. Compl. ¶ 11), which defendants denied in their Answer (Docket No. 84, ¶ 11). In Citigroup Global Market's initial motion to dismiss, defendant referred to "plaintiff's conditional job offer with Citi's Public Sector Lockbox unit" (Docket No. 6, Def. Citigroup Global Market Memo. at 1) and consistently referred to that unit as the Public Sector Lockbox unit. Plaintiff distinguish the jobs she applied for, the first was the temporary job and presumably not to the Public Sector Lockbox unit, and the later position with defendants directly (see Docket No. 97, Pl. Objection at 2). For purposes of this motion to compel, there is **no reason to strike reference to a "Public Sector Lockbox,"** plaintiff's motion (Docket No. 97) to strike those lines is **denied**. Whether the unit is the Public Sector Lockbox or not is not relevant to the issue of the disclosure of the entire IdHS.

The second text plaintiff wishes stricken is defendants' rationale for their actions. They received the IdHS which identified plaintiff as a "person of interest". For purposes of this motion, to compel production of the unredacted IdHS, defendants' statement only provides a factual background and context. Plaintiff's contrary contention has been considered for this relatively limited motion to compel. Therefore, plaintiff's motion to strike this statement from this motion to compel is also **denied**.

17

Again, whether these alleged offending statements eventually would be admissible is not before this Court and (if dispositive) ultimately would be decided by Chief Judge Geraci.

V.      Amended Scheduling Order

Upon resolution of this discovery dispute (cf. Docket No. 95), the Schedule (see Docket No. 82) needs to be amended to reset the discovery (and subsequent) deadlines. Defendants state that they wish to move this case along and intend to file their summary judgment motion (Docket No. 96, Defs. Response at 2).

With the disclosure issue resolved above and no representation that additional discovery is required, a brief period will be set to allow parties to complete outstanding discovery. Thus, discovery is to be completed by **April 30, 2019**; dispositive motions (returnable before Chief Judge Geraci) will be due by **July 29, 2019**. Referral to mediation will end by **August 16, 2019**. If no dispositive motions are filed, parties are to contact the Chambers of Chief Judge Geraci for a Pretrial Conference and to set a trial date.

During the pendency of plaintiff's motion to compel, she also moved for leave to amend her Complaint (Docket No. 98). Rather than continuing to hold the Scheduling Order in abeyance pending resolution of the leave to amend question, this Court now enters the above amended schedule. Action on the leave to amend motion may also further adjust the just set schedule.

CONCLUSION

For the reasons stated above, the United States, through the Attorney General, **intervenes in this action as described above** (Docket Nos. 78, 92, 94). Court Clerk to add the United States as an Intervenor with counsel as identified in prior notices (id.). The Government's in

camera, ex parte version of its Statement of Interest and supporting declaration will be **filed under seal**. As with the unredacted IdHS at issue (Docket No. 83), plaintiff **is not to have access to these papers**.

Plaintiff's motion (Docket No. 88) motion to produce unredacted FBI Identity History Summary (Docket No. 83) for plaintiff is **denied**. Plaintiff's motion to strike defendants' statements from their responding memorandum (Docket No. 97) is **denied**.

The Amended Scheduling Order is as stated above. Also awaiting further briefing is plaintiff's motion for leave to amend the Complaint (Docket No. 98).

Chambers shall send copies of this Order to plaintiff at her address of record and to the United States through counsel.

So Ordered.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
      April 16, 2019